# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

LERON C. HAGINS, JR.,

    Applicant,

v.                                              Case No. 8:19-cv-3145-TPB-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Leron C. Hagins, Jr., a Florida prisoner, timely filed a *pro se* amended application for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 22.) Having considered the amended application, Respondent's response in opposition (Doc. 23), and Hagins's reply (Doc. 24), the Court denies the amended application.

## Procedural History

A state court jury convicted Hagins of two counts of attempted second-degree murder of a law enforcement officer with a firearm. (Doc. 8-3, Ex. 22.) The state trial court sentenced Hagins to consecutive terms of 20 years in prison. (*Id.*, Ex. 28.) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 35.) Hagins sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 41.) The state court

1

denied his motion and the state appellate court *per curiam* affirmed the denial of relief. (Doc. 8-4, Ex. 42, pp. 68-103; Doc. 8-6, Ex. 48, pp. 57-66; Doc. 8-7, Ex. 52.)

## **Facts**[1]

At around 3:30 a.m. on October 23, 2011, Officer Rick Urbina and Sergeant Eric Stender responded to a call of shots fired at a house party in North Port, Florida. As the officers spoke to residents, they noticed Hagins walking towards them. Sergeant Stender saw that Hagins had something in his right hand. The officers yelled at Hagins to show his hands. Hagins asked if they were talking to him, said, "Fuck you," and fired in the officers' direction. Sergeant Stender returned fire. Officer Urbina ducked down. He later saw a bullet hole in the window of an SUV parked behind him. The bullet hole was at the level of Officer Urbina's head and neck. Hagins fled towards a nearby parking lot.

Before the shooting between Hagins and Officer Urbina and Sergeant Stender, other officers were conducting a traffic stop of a vehicle leaving the area. Those other officers then saw and detained Hagins. Hagins was placed in the back of a police car, where his statements were recorded. Officer Urbina and Sergeant Stender observed Hagins in the police car and identified him as the shooter. At the scene of the shooting, police found Winchester brand 9-

---

[1] The factual summary is based on the trial transcript and appellate briefs.

millimeter casings. A 9-millimeter handgun recovered near the location where police apprehended Hagins contained unfired Winchester brand 9-millimeter rounds.

The driver of the vehicle that police stopped was Cameron Premdass. Premdass went to the party with Wilgen Phillipe. Phillipe had a small, black handgun. Premdass saw Hagins shoot a larger gun outside the party, before police arrived. Hagins then came across Premdass and Phillipe and demanded Phillipe's gun. Phillipe complied and gave Hagins the gun.

Inga McGowan, a resident, testified on direct examination that she saw the SUV with bullet holes leave after the shooting involving Hagins and the officers. But she stated on cross-examination that the SUV left the scene before any police arrived.

## Standards Of Review

**The AEDPA**

The Antiterrorism and Effective Death Penalty Act governs this proceeding. *Carroll v. Sec'y, DOC*, 1354 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if an applicant is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

4

understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002).

**Ineffective Assistance Of Counsel**

Hagins alleges ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington,* 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Hagins must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Hagins must show "a reasonable probability that, but for counsel's unprofessional errors,

5

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential.") (internal quotation and citation omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

**Exhaustion Of State Remedies; Procedural Default**

A federal habeas applicant must exhaust his claims by raising them in state court before presenting them in his application. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must

6

give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the applicant fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (stating that unexhausted claims that "would now be procedurally barred in state court due to a state-law procedural default" provide no basis for federal habeas relief).

An applicant shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). An applicant demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs

in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## Discussion

**Ground One**

Hagins asserts that trial counsel was ineffective for failing to object when Officer Urbina testified that he was "100% sure that Mr. Hagins was the shooter and supported that testimony with allusions to a[ ] sport utility vehicle purportedly having bullet hole(s) in its window at the height of Urbina's head and neck Urbina said came from the shot Mr. Hagins took at him." (Doc. 22, p. 6.) Hagins states that Inga McGowan's testimony that an SUV with bullet holes left the scene before officers arrived contradicted Officer Urbina's testimony. Hagins contends that an objection to Officer Urbina's testimony would have resulted in "reasonable doubt as to what actually happened." (*Id.*, p. 9.)

The state court denied Hagins's claim. The state court found that counsel was not ineffective because Officer Urbina's testimony was relevant and admissible and any objection to it would have been overruled:

> In order to prove that Defendant committed Attempted Second Degree Murder as to Officer Urbina . . . , the State had to demonstrate that Defendant intentionally committed an act that could have resulted in his death, and that was imminently dangerous and demonstrated a depraved mind without regard for human life. Officer[ ] Stender's [sic] testimony that he observed a bullet hole at his neck/head level in the window of an SUV parked

8

> behind him at the time Defendant fired his weapon was directly relevant to proving that Defendant committed just such an act. Urbina's observation was made shortly after the shooting incident, before the SUV apparently later left the scene. The clear implication was that Defendant likely made that bullet hole when discharging his weapon.
>
> While Defendant disputes that there was sufficient evidence to prove that he was the originator of that bullet hole because Inga McGowan gave conflicting testimony, this did not make Urbina's testimony the type of confusing or misleading testimony that [Florida's] courts have identified as unduly prejudicial. . . . Resolving the credibility of the witnesses and assigning weight to their testimonies is a function that resides within the province of the jury. . . . It is also notable that McGowan's testimony was, itself, internally conflicting, and part of it supported Urbina's version of events. The jury was free to reject part or all of this testimony, and to form its own conclusions as to whether there was sufficient evidence to show that Defendant['s] actions met the elements of the offense.
>
> For similar reasons, Urbina's statement that he was "100 percent sure" Defendant was the shooter was an admissible statement subject to the jury's evaluation of Urbina's credibility. Defendant's argument that Urbina should not have been permitted to testify with such certainty because he did not actually witness Defendant pulling the trigger is a question that was properly put to the jury. Counsel did just this, as he challenged Urbina's observation on cross-examination, elicited the fact that Urbina did not see the muzzle blast or hear a metal projectile strike nearby, and argued in summation against making any of the State's proffered inference on this question.
>
> For these reasons, counsel's failure to object to this relevant and admissible evidence was not deficient performance, since any objection would have been overruled.

(Doc. 8-4, Ex. 42, pp. 81-83) (state court's footnotes omitted).

Hagins does not show that the state court's decision was unreasonable. The decision rests on underlying questions of state evidentiary law. This Court must defer to the state court's finding that the evidence was relevant and admissible under Florida law. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))). "[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

Hagins appears to argue that the state court's decision was based on an unreasonable factual determination because the order once identified Sergeant Stender instead of Officer Urbina. This reference is a simple typographical error and does not reflect an unreasonable determination of fact. Hagins further argues that the state court's decision was unreasonable because McGowan's testimony that the SUV left before any police arrived was exculpatory. But the state court addressed Hagins's arguments about McGowan's testimony, and Hagins does not show that the state court's consideration of McGowan's testimony resulted in an unreasonable decision.

10

Finally, Hagins appears to argue that the state court's decision was unreasonable because Urbina's testimony about the SUV violated Florida's best evidence rule since neither the SUV's "bullet ridden window" nor a photograph of it was introduced into evidence. (Doc. 22, pp. 6-8.) However, the SUV left the scene and there is no indication that either the window or a photograph of the window were available. Hagins does not show that Officer Urbina improperly testified to his personal observations about the SUV. Additionally, the best evidence rule does not apply to all evidence. *See G.E.G. v. State*, 417 So.2d 975, 977 (Fla. 1982) (stating that "[i]n Florida the 'best evidence rule' only applies to writings, recordings, and photographs"). Finally, as addressed, this Court must defer to the state court's determination that an objection to Officer Urbina's testimony would have lacked merit under Florida's evidentiary law.

Hagins does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground One.

**Ground Two**

Hagins contends that trial counsel was ineffective for failing to move to suppress Sergeant Stender's and Officer Urbina's in-court and out-of-court identifications of him based on an impermissibly suggestive out-of-court identification.

Respondent correctly contends that Hagins's claim is unexhausted because he did not raise this claim in his postconviction motion. (Doc. 8-3, Ex. 41.) Because Hagins cannot return to state court to present the ineffective assistance claim in an untimely postconviction motion, *see* Fla. R. Crim. P. 3.850(b), the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138.

Hagins argues that he has established cause for the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). In recognizing a narrow exception to the rule that ineffective assistance of postconviction counsel does not constitute cause to overcome a procedural default, *Martinez* holds:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

566 U.S. at 17.

To establish cause under *Martinez*, an applicant must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." *Id.* at 14. A claim that does not have any merit or that is wholly without factual support is not substantial. *See id.* at 15-16. An applicant shows that his defaulted claim is substantial under *Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid

claim of the denial of a constitutional right.'" *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014)).

Hagins does not establish that his defaulted claim of ineffective assistance is substantial. Hagins was identified through a "show up" procedure when Officer Urbina and Sergeant Stender identified him near the scene as he sat in the back of a police car. Police may use a show up as a method of identification in criminal investigations. *See Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987) (stating that "immediate confrontations allow identification before the suspect has altered his appearance and while the witness' memory is still fresh, and permit the quick release of innocent persons").

"[D]ue process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012). Thus, an out-of-court identification will be excluded only when law enforcement has acted improperly to obtain it. *See id*. at 233 (holding that "[w]hen no improper law enforcement activity is involved" in obtaining an identification, the reliability of the identification will be tested through means such as cross-examination, jury instructions, and the rules of evidence); *see also Masse v. Sec'y, Fla. Dep't of Corr.*, 700 F. App'x 890, 894 (11th Cir. 2017) (stating that while show ups have some inherent

13

suggestiveness, they "are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation in some way" (quoting *Johnson*, 817 F.2d at 729)).

Hagins does not establish that any improper police action rendered the show-up unnecessarily suggestive. Hagins was apprehended a short time after the shooting, and the officers went to his location and identified him. There is no indication that police aggravated the suggestiveness of the show up procedure. Since the identification procedure was not unnecessarily suggestive, "that ends the inquiry." *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987). And because Hagins fails to establish a meritorious basis for suppression of the identifications, he cannot show that counsel was ineffective for not filing a motion to suppress.

Hagins does not show that his defaulted ineffective assistance claim is substantial. He therefore does not overcome the procedural default under *Martinez*. Hagins does not establish that he can overcome the default through the fundamental miscarriage of justice exception. Accordingly, Ground Two is procedurally defaulted and barred from federal habeas review.

**Ground Three**

Hagins argues that trial counsel was ineffective for failing to move for a mistrial because the State withheld evidence. Hagins contends that the defense did not learn until three days into the August 2013 trial that the State

14

recovered a Glock .45 caliber pistol in December 2011, two months after the offenses occurred in October 2011.

The state court denied Hagins's claim, finding that he failed to establish prejudice. Importantly, the state court explained that the State asserted Hagins used a 9-millimeter firearm to commit the offenses:

> Even assuming that the weapon found on December 11, 2011, was the .45 caliber gun used in this case, Defendant cannot demonstrate prejudice. The State's theory was that Defendant used the 9-millimeter handgun to shoot at the officers, since spent and unspent Winchester brand 9-millimeter Luger cartridges were found at the location of the shooting, and those cartridges matched the CPX-1 9-millimeter handgun retrieved near to where Defendant was apprehended.
>
> The testimony of Cameron Premdass provided the link to how Defendant obtained the 9-millimeter gun from Wilgren Phillipe, who handed it to Defendant at Defendant's request after Defendant had fired the larger gun multiple times. The State argued to the jury that Defendant likely tossed the .45 caliber gun into one of the vehicles that left the scene before law enforcement arrived. That the .45 was found months later at some other location would, consequently, have provided no help to the defense.

(Doc. 8-6, Ex. 48, pp. 63-64) (state court's footnote omitted).

Therefore, the state court found "no reasonable likelihood that the trial court would have found a discovery violation or granted a mistrial" and found that Hagins was not prejudiced by counsel's failure to object. (*Id.*, p. 64.)

Whether to grant a mistrial based on an alleged discovery violation is a matter of state law. In Florida, a mistrial "is warranted only when the error is so prejudicial that it vitiates the entire trial." *Somers v. State*, 162 So.3d 1077,

15

1079 (Fla. 5th DCA 2015). This Court must defer to the state court's determination that a motion for mistrial would have been denied. *See Pinkney*, 876 F.3d at 1295. Hagins fails to show that the state court unreasonably determined that he was not prejudiced by counsel's failure to make a meritless motion. *See Bolender*, 16 F.3d at 1573.

Hagins does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this claim. He is not entitled to relief on Ground Three.

**Ground Four**

Hagins argues that trial counsel was ineffective for failing to object when the State played a recording from the back of the police car where Hagins was detained. It appears that portions of the recording were redacted. However, the recording played for the jury included Hagins's statement, "I hate white people."[2] Hagins asserts that this statement was supposed to have been redacted from the recording and that counsel was supposed to have been engaged in the redaction process. He asserts that the statement's inclusion in the recording impaired his ability to prepare a defense because he believed the jury would not hear it.

---

[2] Hagins stated, apparently to police officers, "Hey, man. Hey, man. (Inaudible) dumb-ass cracker. I hate white people you dumb-ass cracker." (Doc. 8-3, Ex. 20, p. 426.)

16

This claim is unexhausted because Hagins did not raise it in his postconviction motion. (Doc. 8-3, Ex. 41.) Hagins asserts that he overcomes the resulting procedural default through the cause and prejudice exception under *Martinez*. Hagins has not shown that his defaulted claim is substantial.

Before trial, counsel moved to exclude the entire recording on grounds of relevance and undue prejudice. (Doc. 8-2, Ex. 5; Ex. 12, pp. 8, 10; Ex. 16, pp. 64-67.) The State asserted that the recording was relevant to show Hagins's state of mind at the time of the offenses. At the time of the first pretrial hearing on this matter, the State was still in the process of redacting the recording, and the state court made no ruling on admissibility.

At the second pretrial hearing, counsel specifically objected to the inclusion of the statement "I hate white people," and argued that it was irrelevant and highly prejudicial. (*Id.*, Ex. 16, pp, 64, 66.) In response, the State argued that it was required to prove that Hagins acted with ill will, hatred, or spite to prove attempted second-degree murder. (*Id.*, p. 65.)[3] The trial court did not rule on admissibility at that time. (*Id.*, pp. 66-67.) As Respondent notes, the record does not appear to contain the trial court's ruling; however, when

---

[3] To prove attempted second-degree murder, the State had to show that Hagins committed an act "imminently dangerous to another and evincing a depraved mind regardless of human life . . . " § 782.04(2), Fla. Stat. The Florida Standard Jury Instructions define this term in relevant part as an act or series of acts "done from ill will, hatred, spite, or an evil intent." Fla. Std. Jury Instr. (Crim.) 6.4.

17

the recording was played at trial, the prosecutor conveyed that the defense's motion to suppress had been denied. (Doc. 8-2, Ex. 20, p. 415.)

At trial, just before the recording was played, counsel again objected to the recording as irrelevant and unfairly prejudicial. (*Id.*) The trial court overruled the objection, stating that "the content of the recording . . . does address or go to the ill will, hatred, spite, which is an element of . . . attempted second degree murder." (*Id.*)

Hagins has not shown that counsel was ineffective for not lodging yet another objection when the recording was played. Hagins does not identify a different basis for an objection other than the one counsel had repeatedly argued. Moreover, Hagins does not meet *Strickland*'s prejudice prong. He does not show a reasonable probability that the trial court would have sustained another objection when the recording was played. The trial court had already decided that the recording's content was relevant to establishing the "ill will, hatred, spite, or evil intent" element of attempted second degree murder.

Even if a further objection had succeeded, Hagins does not show a reasonable probability of a different outcome at trial given Officer Urbina's and Sergeant Stender's positive identifications of Hagins as the shooter. And while Hagins claims that his ability to develop a defense was hindered, he does not elaborate on this cursory allegation. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that an applicant's "unsupported allegations" that are

18

"conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim). Therefore, Hagins does not establish cause and prejudice to overcome the default under *Martinez*. Nor does he show that the default may be excused under the fundamental miscarriage of justice exception.

Hagins seeks an evidentiary hearing regarding the redaction of the recording. The Court concludes that an evidentiary hearing is not warranted because Hagins has not shown ineffective assistance of trial counsel for the reasons stated in this order. *See Schriro*, 550 U.S. at 474 (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"). Additionally, the Court's ability to receive new evidence to resolve a defaulted ineffective assistance of trial counsel claim is limited. *See Shinn v. Ramirez*, 142 S.Ct. 1718, 1734 (2022) (holding that "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record" in the context of a *Martinez* claim that was defaulted to due postconviction counsel's alleged ineffective assistance). Ground Four is procedurally defaulted and barred from federal habeas review.

Accordingly, it is **ORDERED** that Hagins's amended application (Doc. 22) is **DENIED**. The **CLERK** is directed to enter judgment against Hagins and to **CLOSE** this case.

It is further **ORDERED** that Hagins is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. To obtain a certificate of appealability, Hagins must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Hagins has not made the requisite showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Hagins must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 17th day of November, 2022.

_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**